| UNITED STATES DISTRICT COURT | **NOT FOR PUBLICATION** |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

| CARLOS ECHEVERY MOLINA, | |
|---|---|
| Plaintiff, | |
| – against – | **MEMORANDUM & ORDER** |
| UNITED STATES OF AMERICA | |
| Defendants. | 11-CV-04097 (ERK) |

KORMAN, *J.*:

Pro se plaintiff Carlos Echevery Molina ("Molina") filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2401, 2671, arising from an incident on May 17, 2010, in which he allegedly slipped on food droppings located on the floor of the dining hall at the Metropolitan Detention Center ("MDC"), a federal confinement facility, causing him to fall and injure himself. At the time of the event, Molina was incarcerated at MDC. He claims that his fall and resulting injury were a result of the negligence of Bureau of Prisons ("BOP") staff, and also that he received inadequate medical treatment for his injuries. He seeks $1,000,000 in compensatory damages. The parties cross-move for summary judgment.

**BACKGROUND**

1. **Factual History**

In 2001, nine years before the events at issue in this case, Molina was in a motor vehicle accident in which he fractured his sternum and right ankle. Def.'s Rule 56.1 Statement ("56.1")

¶ 2.[1] Since then, while in and out of federal and state custody for offenses relating to "narcotics and substance abuse," *see id.* at ¶ 1, Molina has suffered from chronic health problems, *see generally* Aff. Supp. Mot. Summ. J. Ex. G ("BOP Rec."), ECF No. 76-7. In particular, he has sought medical care relating to falls in April 2008, May 2010, and August 2010. This lawsuit arises principally out of the May 2010 incident and resulting medical care.

### a. April 2008 Incident and Medical Care

In April 2008, while detained at a private contract facility, Molina fell from a chair and injured his groin. *See* BOP Rec. 642, 644. A few months later, Molina was admitted to MDC, where he reported continuing pain associated with this fall. 56.1 ¶ 5; BOP Rec. 617, 635–37, 642, 644. X-rays taken of his hip and leg in August 2008 were returned "negative," BOP Rec. 683–84, presumably for fractures. An additional MRI taken of Molina's right hip in December 2008 showed capsular thickening but not a tear or fracture. BOP Rec. 612, 676. Molina began using a cane in late 2008 to alleviate his hip pain. *See* BOP Rec. 670.

On July 2, 2009, a BOP physician noted on Molina's medical record that treatment relating to a "thickening of the capsule anteriorly to his right hip" had been delayed. He wrote:

> I explained that he has a thickening of the capsule anteriorly to his right hip and that an appointment has been made with a specialist who feels confident that he can treat this condidition [sic] with a steroid injection. *He asked about the delay and I told him medical bills had not been paid.* Now that the medical bills have been paid by the BOP he will be treated very soon by this doctor.

---

[1] Molina did not timely submit a Rule 56.1 statement. Nevertheless, in light of Molina's claim that he had not received defendant's Rule 56.1 statement, *see* Pl.'s Reply Br. 2, ECF No. 69, I will not deem a fact admitted where plaintiff disputes it within the body of a brief or in his belated Rule 56.1 statement, or there is conflicting evidence in the record, *see Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73, 76 (2d Cir. 2001) (declining to grant summary judgment on the basis of uncontested assertions in the moving party's Local Rule 56.1 statement and observing that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules") (citation omitted); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment . . . . [and] [p]ro se prisoners are, of course, entitled to at least the same solicitude.").

2

BOP Rec. 525 (emphasis added); *see also id.* at 523 ("43 [year old] male waiting for injection into right hip for anterior capsulitis."). Molina also provided as hard copy exhibits to his Motion for Sanctions Against Defendants for Failure to Produce Documents, ECF No. 62, numerous "sick call slips" (intake forms completed by the patient) from 2009 in which he reported severe pain and asked repeatedly for more pain medication. CT scans were taken of his right hip in early 2010 which showed capsulitis. BOP Rec. 289.

### b. *May 2010 Incident and Medical Care*

Molina was still using a cane in the early evening of May 17, 2010, when he lined up to get his food tray in the dining hall of the J71 housing unit at MDC. Aff. Supp. Mot. Summ. J. Ex. C ("Molina Dep.") 31:13–32:6. He fell, losing consciousness. *Id.* at 32:10–11; 33:22–34:15. He does not remember what the floor looked like while he was waiting in line, and did not see the condition of the floor at the time of his fall. *Id.* at 36:19–20; 64:10–14. He does not recall whether the floor was dirtier on that day than any other day. *Id.* at 48:10–13. Indeed, Molina testified that he "[i]mmediately" fell "when [he] received the plate," hitting his head on the ground. *Id.* at 32:10–11, 33:15–16. He did not regain consciousness until he was being placed on a stretcher, and was already in the medical unit by the time he "was able to open [his] eyes well." *Id.* at 36:11–13, 38:10–12. Molina alleges, however, that he was told by other inmates that there were mashed potatoes and other food droppings on the floor when he fell. *Id.* at 48:16–49:4. He remembers the name of only one of these inmates. *Id.* at 48:16–49:4, 64:18–65:6.

When Molina regained consciousness in the MDC medical unit, he was being treated by physician assistant Freddy Nunez. *Id.* at 37:23–38:12. According to Nunez, Molina reported that he had fallen because of a "dizzy spell." Aff. Supp. Mot. Summ. J. Ex. B ("Nunez Decl.") ¶

3

6. Indeed, the medical record for that visit, which Nunez completed contemporaneously, states "Pt states he had dizzy spell slipped" in a section entitled "Cause of Injury (Inmate's Statement of how injury occurred)." BOP Rec. 265. At his deposition, Molina testified that he did not recall telling Nunez that he had fallen because of a dizzy spell, and instead alleged that Nunez told him that he had "slipped." Molina Dep. 49:4–12. Molina revised this narrative in an affidavit attached to his reply brief, asserting that Nunez "actually told [him] 'you slipped on food on the floor' [and] . . . wrote it down for the record." Pl.'s Aff. Supp. Pl.'s Reply Br. ("Pl.'s Aff.") ¶ 3, ECF No. 69 at 33.

On the day of the fall, Molina was treated with Acetaminophen with Codeine, given an ankle brace, and advised to continue to rest, elevate, and apply ice to his ankle. BOP Rec. 266–267; Nunez Decl. ¶¶ 9–10. The following day, x-rays were taken of his ankle, which showed "no evidence of acute abnormality." BOP Rec. 431. Despite this finding, Molina's medical records from May 18, 2010, report that he suffered a fracture, requiring a cast. *Id.* at 263–64. Molina was referred to an outside orthopedist, Molina Dep. 50:11–13, 51:16–52:6, and given an air cast, *id.* at 61:2. He testified that instead of a cast, "[t]hey should have done treatment to me, given—and surgery. Now the bone has welded and it mounted up." *Id.* at 61:3–7.

In what appears to be a copy of his response to interrogatories attached as a hard copy exhibit to his Motion for Sanctions, ECF No. 62, Molina raises two other concerns with his medical treatment: first, he states that the air cast he was given for his fractured right ankle "required use of an air pump which was taken away by the institutional officer"; second, he alleges that, "[w]hile incarcerated at MDC, he was forced to ambulate on this broken ankle and was not provided with a wheel chair." A medical record dated June 7, 2010, corroborates Molina's statement that he did not have the air pump required for his air cast, noting that the

"[p]ump for cast was lost." BOP Rec. 253. Molina's statement that he "was not provided with a wheel chair" is, however, contradicted by his deposition testimony, in which he stated that he was given a wheelchair and pain medication after his fall. *Id.* at 52:6–7. Precisely when he received this equipment is less clear, though. In an "Inmate Request to Staff" dated May 21, 2010—four days after Molina's fall—and attached to his Motion for Sanctions as a hard copy exhibit, Molina stated that, despite being recommended pain medication and crutches, "right now I have not receive[d] any of those: no medicine and no cru[t]ches." Three days later—a full week after the accident—physician assistant Mark Alperin noted in a medical record that he "discussed with RN and will find patient pair of crutches." BOP Rec. 258. Molina appears ultimately to have received both crutches and a wheelchair. *See id.* at 232, 307, 315.

   *c. August 2010 Incident and Medical Care*

Molina was subsequently transferred to Rikers Island. 56.1 ¶ 27. On August 5, 2010, one month after his arrival, he reported to personnel that he had fallen while descending a staircase, and was sent to an orthopedist for consultation. Aff. Supp. Mot. Summ. J. Ex. F, ECF No. 76-6 at 12. X-rays of Molina's head, right hip, pelvis, left shoulder, left knee, right foot, right ankle, and cervical spine taken on the day of the reported injury found no fracture or dislocation. *Id.*, ECF No. 76-6 at 3–10.

Five days later, plaintiff returned to MDC. Aff. Supp. Mot. Summ. J. Ex. A ("Bork Decl.") ¶ 6, ECF No. 76-1. At a medical examination in August 2010, it was determined that he would need an x-ray of his hip in light of his chronic pain. BOP Rec. 245. The record does not indicate whether this x-ray was ever performed. He was examined again shortly thereafter in anticipation of an upcoming transfer. *Id.* at 232; Bork Decl. ¶ 7. In January 2011, Molina had additional x-rays taken of his left thumb and right ankle. BOP Rec. 183–84. The x-ray of his

ankle came back negative for fractures, and the x-ray of his thumb was negative except for a small ossification fragment. *Id.*

2. **Procedural History**

After duly exhausting all administrative claims, *see* Am. Compl. ¶ 6, ECF No. 29, Molina filed a complaint pursuant to 42 U.S.C. § 1983, listing as defendants the City of New York, the New York City Department of Corrections, Rikers Island Correctional Institution, Queens Private Detention Facility, MDC, and BOP, *see* Compl. 1, ECF No.1. Defendants filed motions to dismiss for failure to state a claim for relief and for lack of jurisdiction, which I granted without prejudice to re-plead within 21 days. Order dated Feb. 1, 2012. Molina timely filed an amended complaint raising claims under the FTCA against defendant United States.

In his amended complaint, Molina alleges that defendant violated its "obligation to provide the inmates, including the Plaintiff, with a safe, clean and healthy environment" by "fail[ing] in its obligation and duty to clean the floor of the 'Mess Hall' prior to commencing service of food for the Dinner time [on May 17, 2010], resulting in the floor being covered throughout with bits of food and liquid, and in particular liquid potatoes." Am. Compl. ¶¶ 11, 13. Molina does not discuss either the April 2008 or August 2010 falls. *See generally id.* He alleges that defendant was "further negligent in refusing and failing to properly address his health care, including medical treatment, [in] having his pain assessed and managed in a timely and medically accepted manner, [and in providing him] medication, as well as access to and equipment he needed for treatment for his complaints and maladies." *Id.* at ¶ 16. Molina does not provide the dates of this allegedly negligent care or any other specifics about defendant's alleged breach. Nevertheless, he concludes that, "[a]s a result of the negligence by Defendant

USA, by its agents, servants and/or employees, the Plaintiff sustained severe and permanent injuries to various parts of his body including his ankle, spine, head, [and] finger." *Id.* at ¶ 17.

After several extensions, discovery was closed on June 5, 2013. Order dated Mar. 14, 2013. Molina filed motions to reopen discovery on October 25, 2013, and June 13, 2014, and a motion to compel discovery and for sanctions against defendant on September 11, 2011. *See* ECF Nos. 47, 53, 55. Each of these motions focused on defendant's alleged failure to produce materials relating to plaintiff's visit in May 2010 to an orthopedic specialist, who allegedly recorded the meeting with a tape recorder. Magistrate Judge Robert Levy denied these motions on the grounds that defendant's counsel "advised that she has produced all records in the government's possession, custody and control and that there is no tape recording of a visit with a specialist 3 days after the incident, or with any specialist at any time," and also that "these records, if they exist, appear to go to damages rather than liability." *See* Minute Entry dated July 8, 2014; Order dated Oct. 1, 2014. I denied another, substantively identical motion for sanctions in early 2015. *See* Order dated Feb. 20, 2015.

Molina's counsel, Ishmael Gonzalez, moved to withdraw as counsel in March 2013 after the United States Attorney provided him with medical records confirming that Molina fractured his right ankle in the 2001 motor vehicle accident. The motion, which was based on a sealed affidavit, was granted. Order dated Mar. 29, 2013. Although he was afforded an opportunity to obtain counsel, *see* Orders dated Mar. 29, 2013, May 21, 2013, and August 27, 2013, Molina was unsuccessful in doing so and is currently proceeding pro se, *see* ECF No. 46.

Defendant moved for summary judgment on October 31, 2014, and Molina cross-moved on February 2, 2015. ECF Nos. 59, 61. I turn now to those motions.

## DISCUSSION

7

1. **Standard of Review**

When deciding cross-motions for summary judgment, "the standard is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other." *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 828 (S.D.N.Y. 1996). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). Nevertheless, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 250–51.

"Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (quoting *Carbonell v. Goord*, No. 99 Civ. 3208, 2000 WL 760751, at *5 (S.D.N.Y. June 13, 2000)). Moreover, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citations omitted).

2. **Federal Tort Claims Act**

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the

suit." *United States v. Sherman*, 312 U.S. 584, 586 (1941). The FTCA provides a waiver of the United States' sovereign immunity for

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA defines government employees to include "officers or employees of any federal agency." 28 U.S.C. § 2671. The statute renders the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances," except that it is not liable for interest prior to judgment or for punitive damages. 28 U.S.C. § 2674.

### 3. Negligence

#### a. *Legal Standards*

"New York's negligence law governs this controversy because, under the FTCA, the liability of the United States for injuries caused by the negligent acts or omissions of its employees is determined 'in accordance with the law of the place where the act or omission occurred.'" *Citarella v. United States*, No. 12-CV-2921 ADS AKT, 2015 WL 58623, at *2 (E.D.N.Y. Jan. 3, 2015) (citations omitted); *see also Makarova v. United States,* 201 F.3d 110, 114 (2d Cir. 2000) ("Under the FTCA, courts are bound to apply the law of the state . . . where the accident occurred.").

"To establish a *prima facie* case of negligence under New York law, three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result

9

of that breach." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998) (citations omitted). "[W]hile inferences of negligence may be drawn from circumstantial evidence, those inferences must be the only ones which reasonably could be drawn from the evidence presented." *Silverman v. United States*, No. CV 04-5647 (ETB), 2008 WL 1827920, at *12 (E.D.N.Y. Mar. 28, 2008) (quoting *Mehra v. Bentz,* 529 F.2d 1137, 1139 (2d Cir. 1975)). The plaintiff is not "required to offer evidence which positively excluded every other possible cause of the accident," *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 420 (2d Cir. 2004) (citing *Ingersoll v. Liberty Bank of Buffalo,* 14 N.E.2d 828, 830 (N.Y. 1938)), but "[c]onjecture or speculation as to a 'possibility of causation' is not enough to establish liability on the part of the defendant," *Silverman*, 2008 WL 1827920, at *12 (citing *Mehra*, 529 F.2d at 1139); *see also Wang v. Alexander's Dep't Store,* 247 A.D.2d 467, 467–68, 668 N.Y.S.2d 104 (2d Dep't 1998) (granting summary judgment to defendants where plaintiffs were unable to "connect the accident to any negligence on the part of the respondents" and the affidavit provided by plaintiffs' expert "consisted of sheer speculation as to any negligence on the part of the respondents and additionally failed to connect even that alleged negligence with the [plaintiff's] injury").

"In order to show breach of a duty of care in a slip-and-fall case, the plaintiff must demonstrate a genuine issue of material fact that the defendant either created the dangerous condition or had actual or constructive notice of the condition." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014); *accord Riley v. Battery Place Car Park*, 210 F. App'x 76, 77 (2d Cir. 2006) (summary order). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Silverman*, 2008 WL 1827920, at *14 (citing *Gordon v. Am. Museum of Nat. History,* 67 N.Y.2d 836, 837, 492 N.E.2d 774 (1986); *Tuthill v.*

*United States,* 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003); *Hammond-Warner v. United States,* 797 F. Supp. 207, 211 (E.D.N.Y. 1992)). "The plaintiff may alternatively establish constructive notice on the part of the defendant by 'demonstrating a recurring dangerous condition in the area of the slip and fall that was routinely left unaddressed.'" *Id.* at *15 (citation omitted).

### b. Merits

It has long been established that "[t]he federal government owes a duty of reasonable care to safeguard the security of prisoners under its control," *Owens v. Haas*, 601 F.2d 1242, 1249 (2d Cir. 1979), and defendant does not contest that such a duty exists. To withstand summary judgment, Molina must therefore produce sufficient evidence to allow a reasonable jury to find the two remaining elements: (1) that BOP breached this duty of reasonable care; and (2) that Molina's injuries were proximately caused by that breach. *See Curley*, 153 F.3d at 13.

I turn first to causation. Molina acknowledges that he did not see any food on the floor of the dining hall at the time of his fall, Molina Dep. 36:19–20; 64:10–14, and so relies instead on the alleged statements by several other inmates, only one of whom he could name, that there were mashed potatoes on the ground, Molina Dep. 48:16–49:4, 64:18–65:6. These statements are inadmissible hearsay and thus provide neither support for Molina's summary judgment claim nor a reason to deny defendant's motion. *See* Fed. R. Evid. 801(c); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 357 (2d Cir. 1997). Moreover, the statement attributed in Molina's affidavit to physician assistant Nunez ("He actually told me 'you slipped on food on the floor'") is inconsistent with Molina's deposition testimony. There, he said only that, when they took him "upstairs" after he fell, he asked Nunez what happened, and Nunez "told [him] you slipped. That's what he answered to

11

me." Molina Dep. 49:5–7.[2] Molina did not say at his deposition that Nunez told him that he had slipped *on food*. The omission in Molina's deposition testimony precludes him from relying on his affidavit to create an issue of fact. The rule is "well established" that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). Indeed, the Second Circuit has held that summary judgment is proper where there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint." *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (citations omitted).

This consideration aside, it is arguable whether the alleged statement by Nunez is admissible as a statement offered against an opposing party and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Even assuming that Nunez would have been acting within the scope of his employment as a physician assistant in making the statement attributed to him in Molina's affidavit, there is no evidence—or even an allegation—that he witnessed the fall. There is no basis on which to infer that a physician assistant would have been in the inmate dining hall, and, indeed, Molina explained that he was treated by Nunez only once he had been taken "upstairs." Molina Dep. 49:5–7. Instead, any statement Nunez made would appear to have been based on the hearsay statements of other prisoners. *See Pittman by Pittman v. Grayson*, 149 F.3d 111, 124 (2d Cir. 1998) (citations omitted) (holding inadmissible an employee's statement under Fed. R.

---

[2] Nunez's affidavit and the contemporaneous medical record are consistent that Molina reported immediately after the fall that he had a dizzy spell, causing him to slip. *See* Nunez Decl. ¶¶ 6–7; BOP Rec. 265.

12

Evid. 801(d)(2)(D) because "[n]o basis ha[d] been shown for classifying" the employee's statement itself "either as nonhearsay or as an exception to the hearsay rule"); *see also* C. Mueller & L. Kirkpatrick, 4 Fed. Evid. § 8:55, p. 451 (3rd ed. 2007).

Finally, even assuming the evidence of causation is sufficient to withstand the motion for summary judgment, Molina has failed to establish that defendant breached a reasonable standard of care. In a slip-and-fall case, to establish breach, Molina must show either that defendant created the dangerous condition, or that it had actual or constructive notice of the condition. *See Lionel*, 44 F. Supp. 3d at 318. Because Molina has not provided any evidence that a government employee or agent was responsible for the presence of the food droppings in the first place, or that BOP officials at MDC had actual notice that there was food on the floor, he can survive summary judgment only if he has shown that these officials had constructive notice. This he has failed to do. While food droppings likely satisfy the "visible and apparent" criterion for constructive notice, Molina has not demonstrated that the droppings were left on the floor "for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Silverman*, 2008 WL 1827920, at *14 (citations omitted). Nor, in the alternative, has Molina demonstrated that this was "a recurring dangerous condition . . . that was routinely left unaddressed." *Id.* at *15. His speculation that the floor "could [have] be[en]" dirtier on the day in question than on any other day, *see* Molina Dep. 48:10–13, is insufficient either to establish that the floor was especially dirty on the day of his fall, or that the floor was routinely in dangerous condition. In the absence of any evidence in support of this essential element of Molina's claim, summary judgment is warranted. *See Jaramillo*, 536 F.3d at 145.

Molina's attempt to establish breach by relying on the doctrine of *res ipsa loquitur* is unavailing. "*Res ipsa loquitur* is an often confused and often misused doctrine that enables a

13

jury presented only with circumstantial evidence to infer negligence simply from the fact that an event happened." *St. Paul Fire & Marine Ins. Co. v. City of N.Y.*, 907 F.2d 299, 302 (2d Cir. 1990). To invoke this doctrine, "the plaintiff must establish that: (1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff." *Id.* (citing *Dermatossian v. N.Y.C. Transit Auth.,* 492 N.E.2d 1200, 1204 (N.Y. 1986); Restatement (Second) of Torts § 328D (1965)). *Res ipsa loquitur* is generally inapposite in a slip-and-fall case, "given the possibility that [the] plaintiff's fall was caused by her own misstep." *See Anderson v. Skidmore Coll.*, 941 N.Y.S.2d 787, 790 (3rd Dep't 2012); *see also Coale v. Metro-N. R.R. Co.*, 34 F. Supp. 3d 206, 219 (D. Conn. 2014) ("[Plaintiff] can satisfy neither the first nor second criteria [for *res ipsa loquitur*]. Slip and fall cases often occur in the absence of negligence . . . . [and] the possibility that someone other than [defendant] could have caused the spill [means that] this Court cannot conclude that [defendant] had exclusive control of the substance upon which [plaintiff] slipped."). Molina has not established that his case is the rare exception.

I turn lastly to Molina's assertion that he lacks sufficient evidence of causation only because defendant has not provided video evidence captured in observation cameras located in the dining hall, or access to inmate witnesses allegedly in defendant's control. Pl.'s Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. 5–6, ECF No. 61. Molina alleges that he asked for these videos in a discovery motion, but defendant "totally ignored [it] . . . didn't even answer that there was no video or was lost or erased, just plainly ignored the request." *Id.* at 5. In response to my inquiry, however, the United States Attorney stated that her "records reflect that no written request for such materials or witnesses was made by Plaintiff's former attorney. Further, neither

14

the . . . Assistant U.S. Attorney nor counsel for the [BOP] has any recollection of such request having been made orally by Plaintiff's former counsel." ECF No. 81, at 1.

To the extent that Molina now seeks—yet again—to reopen discovery, his request comes too late. The initial discovery schedule, set while Molina was still represented by counsel, provided the parties with six months to complete factual discovery. *See* Minute Entry dated Mar. 1, 2012. That deadline was extended until December 14, 2012, by joint request of the parties. *See* ECF Nos. 31–32 and Orders dated July 13, 2012, and Nov. 5, 2012. Molina was represented by counsel until March 2013. *See* Order dated Mar. 29, 2013. After the close of discovery, Molina filed four motions seeking to reopen discovery and to compel defendants to provide him with documents relating to his visit to an orthopedic specialist after his May 2010 fall. *See* ECF Nos. 47, 53, 55, 62. None of these four motions sought, or even mentioned, the possibility of video documentation or inmate witnesses. In any event, the United States Attorney explains that she "already determined during the discovery period that there was no videotape of the alleged slip-and-fall at issue in this case, and that no MDC-Brooklyn staff had any independent recollection of the alleged slip-and-fall incident in question." ECF No. 81, at 1. Under these circumstances, I decline to reopen discovery.

**4. Medical Claims**

  *a. Source of Law and Legal Standards*

It is unclear from the face of the amended complaint whether Molina presents a claim of medical malpractice or ordinary negligence. This distinction "is a subtle one, for medical malpractice is but a species of negligence and 'no rigid analytical line separates the two.'" *Staveley v. St. Charles Hosp.*, 173 F.R.D. 49, 51 (E.D.N.Y. 1997) (citing *Weiner v. Lenox Hill Hosp.,* 673 N.E.2d 914, 916 (N.Y. 1996)). Indeed, the elements are, in effect, identical. As with

15

an ordinary negligence claim, "[t]o establish a claim of 'medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries.'" *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995) (quoting *Arkin v. Gittleson,* 32 F.3d 658, 664 (2d Cir. 1994)). Thus, in the typical case, the distinction between medical malpractice and ordinary negligence is of import only where compliance with New York's shorter statute of limitations or notice requirements for medical malpractice claims is at issue. *See, e.g.*, *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 472 (S.D.N.Y. 2012) (citation omitted).

There is, however, another scenario in which this distinction may hold significance. New York law provides that, in a medical malpractice case, "'except as to matters within the ordinary experience and knowledge of laymen, . . . expert medical opinion evidence is required' to make out both of these elements." *Milano by Milano*, 64 F.3d at 95 (quoting *Fiore v. Galang,* 478 N.E.2d 188, 189 (1985)). "[I]n the view of the New York courts, the medical malpractice case in which no expert medical testimony is required is 'rare.'" *Sitts v. United States*, 811 F.2d 736, 740 (2d Cir. 1987) (citation omitted). Moreover,

> even where negligence is easily within the layman's realm of knowledge and hence properly provable without expert testimony, expert testimony may be required to prove that the negligence was the proximate cause of the injury complained of, for '[a]lmost every person who receives the services of a physician is sick or disabled when he first goes to the physician. Thus there lurks the ever present possibility that it was the patient's original affliction rather than the physician's negligence which caused the ultimate damage.'

*Id.* (citations omitted). Without such expert evidence, in a medical malpractice case, "the defendant is entitled to judgment as a matter of law." *Id.* Thus, where, as here, the plaintiff fails

to produce any expert testimony in support of his claim, the distinction between a medical malpractice claim and an ordinary negligence claim may be dispositive.

Nevertheless, because, as explained below, I find that Molina has failed to provide sufficient evidence in support of his medical claims *regardless of whether expert testimony is required*, I need not determine whether his allegations sound in medical malpractice or ordinary negligence. I will thus proceed to analyze them under an ordinary negligence standard.

### b. *Merits*

Because Molina received considerable medical treatment throughout his incarceration, and failed to include in his amended complaint the dates of the allegedly inadequate care, it is necessary to determine, first, which treatment is at issue. Significantly, Molina's amended complaint does not mention either his April 2008 or August 2010 falls. Rather, after alleging that defendant's negligence caused him to slip and fall on May 17, 2010, and noting that "*[t]hereafter*, the Plaintiff complained concerning various and continuing bodily pain and injuries," Molina states that defendant was "*further negligent* in refusing and failing to properly address his health care . . . ." Am Compl. ¶¶ 15–16 (emphasis added). In the absence of any reference to the April 2008 or August 2010 falls, and given the amended complaint's chronological structure, I construe the two paragraphs alleging inadequate medical care as pertaining only to the treatment Molina received following his May 2010 fall.[3]

---

[3] Even if Molina had properly alleged malpractice claims relating to the April 2008 or August 2010 injuries, the only pieces of evidence he has provided of inadequate medical treatment following either of the these incidents are: (1) the medical record indicating that he was delayed in receiving a steroid injection in his hip in July 2009 because the BOP had not paid its medical bills; and (2) several "sick call slips" from 2009 in which he reported severe pain and requested more medication. While a delay in necessary treatment could conceivably constitute a breach of the standard of care, Molina has not provided evidence that the delay in July 2009 was lengthy, or that it was a cause of the injury for which he seeks damages. The "sick call slips" also fall short of raising a triable issue of fact, particularly in light of Molina's acknowledgement that, at another time, he was denied pain medication because he "used it a lot and they didn't want to give me anymore until the doctor would authorize it." Molina Dep. 52:6–9.

Although Molina did not specify how defendant "fail[ed] to properly address his health care," *see* Am. Compl. ¶ 16, affording him the "special solicitude" appropriate for a pro se prisoner, *see Graham v. Lewinski*, 848 F.2d at 344, I conclude that the record contains evidence of two possible breaches: First, the denial of an air pump for the air cast Molina was provided for his fractured right ankle. *See* BOP Rec. 253 (noting that "[p]ump for cast was lost"). Second, the apparent delay in providing Molina with either crutches or a wheelchair. *See id.* at 258 (medical record dated seven days after the fall and six days after Molina was found to have fractured his ankle, in which a physician assistant noted that he would "find patient [a] pair of crutches"). This conclusion is consistent with Molina's assertion that defendant failed to provide "equipment he needed for treatment for his complaints and maladies." Am. Compl. ¶ 16.

Both of these matters potentially fit "within the ordinary experience and knowledge of laymen," for which—even if I were to construe Molina's claim as one of medical malpractice— expert testimony is not required. *See Milano by Milano*, 64 F.3d at 95. Indeed, at first read, it would seem self-evident that the denial of the very equipment prescribed as treatment for Molina's injury is a breach of defendant's duty of reasonable care. Nevertheless, significant questions remain. How frequently must an air cast be pumped in order to remain effective, and for how long was Molina without a pump? Did Molina still have a cane during the period when he was without either crutches or a wheelchair, and does a cane constitute an adequate temporary substitute for crutches or a wheelchair for a patient with injuries such as his? Was Molina allowed to remain in bed on the days when he had neither crutches nor a wheelchair, or was he forced to leave his cell (for example, for meals)? Without the benefit of any evidence, expert or otherwise, as to these matters, it is unclear that a reasonable jury could find in Molina's favor.

In any event, I need not decide whether Molina established a genuine issue of material fact on the question of breach, because his claim suffers from another, unequivocal defect: he has not provided any evidence that the denial of the air pump or the delayed provision of crutches or a wheelchair was the proximate cause of the allegedly "severe and permanent injuries to various parts of his body including his ankle, spine, head, [and] finger." Am. Compl. ¶ 17. Molina has not shown a connection between the two potential breaches, both of which relate to treatment for his right ankle fracture, and his (apparent) spine, head, and finger injuries. Instead, he "merely relies upon his own conclusion" that he was injured as a result of defendants' action or inaction, which is insufficient to survive summary judgment. *Ford v. Spears*, No. 10 CV 1314 RJD LB, 2012 WL 4481739, at *13 (E.D.N.Y. Sept. 27, 2012) (citation omitted). While his ankle injuries could plausibly have been exacerbated by the denial of a functioning air cast and crutches or a wheelchair, those injuries long predate his May 2010 fall and subsequent medical treatment. The Second Circuit's warning of the "ever present possibility that it was the patient's original affliction rather than the physician's negligence which caused the ultimate damage," thus weighs heavily here. *Sitts*, 811 F.2d at 740. The extent of such "ultimate damage" is also unclear; notably, an x-ray taken of Molina's ankle in January 2011 came back negative for fractures. In sum, without any evidence, expert or otherwise, that defendant's actions proximately caused his injuries, Molina cannot withstand defendant's motion for summary judgment.

## CONCLUSION

Defendant's motion for summary judgment is granted. Molina's cross-motion for summary judgment is denied.

**SO ORDERED.**

Brooklyn, New York
July 16, 2015

*Edward R. Korman*

Edward R. Korman
Senior United States District Judge